58 CCPA

**WILLIAMS, CLARKE CO., Van Camp Sea Food Co.**

v.

**The UNITED STATES.**

**Customs Appeal Nos. 5384 and 5385.**

United States Court of Customs and Patent Appeals.
Feb. 4, 1971.

---

**6.** If a bottom piece is used rather than simply using the top of the kiln car as

the bottom of the furnace, the number is ten.

Glad & Tuttle, Los Angeles, Cal., attorneys of record, for appellants. Robert G. White, Los Angeles, Cal., of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, New York City, William D. Appler, Washington, D. C., for the United States.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and NICHOLS, Judge, United States Court of Claims, sitting by designation.

ALMOND, Judge.

This is a consolidated appeal from judgments of the United States Customs Court, Third Division,[1] dismissing as untimely appellants' protests of decisions classifying imported tuna fish and the cans in which it was contained under item 112.30, TSUS, as "tuna in containers weighing with their contents not over 15 pounds each." By including the value of the cans in the assessed value, the Bureau of Customs refused to accord them duty-free entry as American goods returned, pursuant to item 807.00, TSUS. The entries were liquidated in May and September of 1965, and the decisions became final under section 514 of the Tariff Act of 1930, sixty days after the date of each liquidation. The protests were not filed until July 5, 1966.

1. 62 Cust.Ct. 756, C.D. 3863 (1969), and 62 Cust.Ct. 759, C.D. 3864 (1969).

Appellants' position in the court below was that by virtue of the terms of the Tariff Schedules Technical Amendments Act of 1965, P.L. 89–241, 79 Stat. 933, as amended by Public Law 90–36, 81 Stat. 94, they were entitled to reliquidation of the entries. The Technical Amendments Act permits reliquidation of entries which have become final under section 514 where the amount of duty would be smaller because of the provisions of the Act. It was appellants' contention that changes in the phraseology of item 807.00 contained in the Technical Amendments Act brought the cans within its ambit, that the amount of duty would thus be smaller, and that therefore they were entitled to reliquidation. Appellants argued that the process to which the American-made cans had been subjected in Ecuador was an assembling rather than a manufacturing process and that they were entitled to the benefits of item 807.00.

The United States, appellee here, moved to dismiss the protests as untimely, asserting that the only broadening of item 807.00 by the Technical Amendments Act was to permit activities incidental to the act of assembly, such as "cleaning, lubricating, and painting," none of which was involved in the instant case. In response to appellee's motions to dismiss, the Customs Court stated:

> We * * * agree with the contention advanced by defendant that as to item 807.00 "No new right or claim was brought about by the passage of the Technical Amendments Act, that was not existent prior thereto." * * We conclude, consequently, that plaintiff's failure to file its protest under item 807.00 of the tariff schedules as originally enacted within 60 days of liquidation of the involved entry deprives this court of jurisdiction to entertain the protest claim for relief under the more restrictive provisions of item 807.00 of the tariff schedules as amended by Public Law 89–241.

By reason of our conclusion herein we do not reach the merits of the controversy, and the instant protest must be dismissed for untimeliness.

The sole issue here is whether the Customs Court was correct in holding that it had no jurisdiction because the protests were not timely filed.

The statutes involved are:

Section 514 of the Tariff Act of 1930 (19 U.S.C. § 1514):

*Protest against collector's decisions*

> [A]ll decisions of the collector * * as to the rate and amount of duties chargeable * * * and his liquidation or reliquidation of any entry * * shall, upon the expiration of sixty days after the date of such liquidation * * be final and conclusive upon all persons * * * unless the importer * * * shall, within sixty days after, but not before such liquidation * * file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each * * * decision * * * the reasons for the objection thereto.

Item 112.30 of the Tariff Schedules of the United States:

> Tuna:
>
> 112.30 In containers weighing with their contents not over 15 pounds each, for an aggregate quantity entered in any calendar year not to exceed 20% of the United States pack of canned tuna during the immediately preceding calendar year, as reported by the United States Fish and Wildlife Service ............ 12.5% ad val.

Item 807.00 of the Tariff Schedules of the United States:

> Articles assembled abroad in whole or in part of products of the United States which were exported for such purpose and which have not been advanced in value or improved in condition abroad by any means other than by the act of assembly....
>
>> A duty upon the full value of the imported arti-

cle, less the cost or value of such products of the United States.

Item 807.00 of the Tariff Schedules of the United States, as amended by the Tariff Schedules Technical Amendments Act of 1965, P.L. 89–241, 79 Stat. 933, 949:

Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported, in condition ready for assembly without further fabrication, for the purpose of such assembly and return to the United States, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting [a duty same as above].

Sec. 2. Effective Date.

(a) Except as otherwise provided, the amendments and repeals made by this Act shall apply with respect to articles entered, or withdrawn from warehouse, for consumption after the 60th day after the date of the enactment of this Act.

(b) Upon request therefor filed with the collector of customs concerned on or before the 120th day after the date of the enactment of this Act [extended to September 30, 1967, by Public Law 90–36, 81 Stat. 94], the entry or withdrawal of any article—

(1) which was made after August 30, 1963, and before the 61st day after the date of the enactment of this Act, and

(2) with respect to which the amount of duty would be smaller if the amendments and repeals made by this Act * * * applied to such entry or withdrawal, shall, notwithstanding the provisions of section 514 of the Tariff Act of

1930 or any other provision of law, be liquidated or reliquidated as though such entry or withdrawal had been made on the 61st day after the date of the enactment of this Act.

P.L. 89–806, section 1(a), 80 Stat. 1523:

[I]tem 807.00 of the Tariff Schedules of the United States is amended by striking out the comma after "exported" in clause (a) and by striking out "for the purpose of such assembly and return to the United States,".

The record reveals that the cans of tuna fish imported from Ecuador were classified and liquidated on May 25, 1965 and September 7, 1965 under item 112.30, TSUS, as "tuna in containers weighing with their contents not over 15 pounds each." Appellants did not file protests from this classification nor from the refusal to apply item 807.00 to the entries. The classification therefore became final sixty days after each date of liquidation (19 U.S.C. § 1514). Reliquidation in each case was requested within 120 days of the enactment of the Technical Amendments Act of 1965. Both protests were filed on July 5, 1966 from refusal to reliquidate, and both were denied on October 28, 1966. Prior to introduction of appellants' evidence, appellee moved to dismiss the protests as untimely, asserting that there was nothing in the changed phraseology of item 807.00, Technical Amendments Act, which gave appellants any new claim or right under that Act, in that no lower duty was created by the terms of the statute to invoke application of its retroactive provisions. The Customs Court reserved judgment on the motions pending completion of the trial.

In factual aspect, the record below consists of three exhibits and the testimony of five witnesses in support of appellants' contention that the process applied to the cans in Ecuador was an assembly process within the purview of item 807.00, as amended. The opinion below recognized that by virtue of the retroactive provisions of the Technical Amendments Act, item 807.00, as amended, would apply to appellants' situation

provided that the duty involved would be smaller by reason of the statute. Upon examination of the former language of item 807.00, the court was of the view that the amended language did not create a new claim or right to a lower duty as to the merchandise involved here. The court pointed out that appellants' case was posited on the theory that P.L. 89–241 gave it a right with attendant duty exemption, which was a new right, that it did not possess before.

In response to appellants' argument that the Technical Amendments Act broadened its right, the court found that the only such broadening consisted of "activities incidental to the act of assembly such as cleaning, lubricating, and painting," none of which was done in this case. The court further found that the language was in all other respects *more* restrictive than the former language. Having reached this conclusion, the Customs Court considered it unnecessary to otherwise deal with the merits of the controversy and dismissed the protests for untimeliness.

There is no room for doubt that the decisions of the Bureau of Customs, in the present appeals, became final when appellants failed to protest those decisions within 60 days of the liquidations (19 U.S.C. § 1514). A timely protest is essential as a basis upon which the Customs Court can predicate jurisdiction to consider the merits of an importer's claim. Olavarria & Co. v. United States, 47 CCPA 65, C.A.D. 729 (1960); United States v. Mexican Petroleum Corp., 28 CCPA 90, C.A.D. 130 (1940).

A limited exception, however, has been provided to the finality provision of 19 U.S.C. § 1514 by virtue of section 2 of the Tariff Schedules Technical Amendments Act of 1965, P.L. 89–241, 79 Stat. 933. This section allows reliquidation "notwithstanding the provisions of section 514" where "the amendments and repeals made by this Act" would result in a "smaller" amount of duty. Where the statute changes the amount of duty to a lower amount, it was the intention of Congress that the importer receive the benefits of the lower rate. The Conference Report (House Report No. 979, 89th Cong., 1st Sess.) states:

> In cases where the bill provides a lower duty than the Tariff Schedules of the United States (TSUS), section 2 permits entries and withdrawals after August 30, 1963 and before the general effective date to be liquidated or reliquidated on the basis of the lower duty.

In introducing the legislation, Representative Mills explained that "[a] number of amendments are merely clarifying in nature and would involve no changes in rates of duty on imported articles" (110 Cong.Rec. 19917). Thus, we deduce that where there is no change in the law creating a new right in the importer, the retroactive provisions do not apply to a particular liquidation which otherwise has become final. The legislative history does not, in our view, support the conclusion that Congress intended to revive claims which had become final and which were not affected by changes in the law.

We think the issue is reduced to whether the amendment to item 807.00 creates a new right in appellants.

At the time when the tuna fish was entered and liquidated prior to the amendment, item 807.00 provided an exemption from duty for American goods returned in the following language:

> Articles assembled abroad in whole or in part of products of the United States which were exported for such purpose and which have not been advanced in value or improved in condition abroad by any means other than by the act of assembly.

It was incumbent, therefore, upon the importer, in order to qualify for the benefits of this provision, to show that the entry was a product of the United States which was (1) exported for the purpose of assembly and (2) had not been advanced in value or improved in condition abroad except by act of assembly. The portion of the importer's burden rele-

vant here was to show that the only act done to the product abroad was an act of assembly.

To illustrate the changes wrought by the Technical Amendments Act, we italicize phrases therein as follows:

> Articles assembled abroad in whole or in part of *fabricated components, the product of the United States,* which (a) were exported, *in condition ready for assembly without further fabrication,* for the purpose of such assembly *and return to the United States,* (b) *have not lost their physical identity in such articles by change in form, shape, or otherwise,* and (c) have not been advanced in value or improved in condition abroad except by being assembled and *except by operations incidental to the assembly process such as cleaning, lubricating, and painting.*

We think it clear that the italicized language, except in one aspect which is clearly not applicable to appellants, instead of broadening the ambit of the statute imposes conditions which are far more restrictive than the language originally employed in item 807.00.

It further appears manifest that Congressional draftsmen expressly recognized the restrictive effect of these changes, as the House Committee report notes:

> The U. S. components would be specifically limited to "fabricated" components exported "in condition ready for assembly without further fabrication" which do not lose "their physical identity" in the assembly article "by change in form, shape, or otherwise." Thus, item 807.00 would apply with respect to components of types which are designed to be fitted together with other components and would not apply to chemical products, food ingredients, liquids, gases, powders, etc. [House Report No. 342, 89th Cong., 1st Sess., p. 49.]

Therefore, we must agree with the Customs Court that:

> We are, of course, mindful of plaintiff's contention that item 807.00 as

originally enacted was broadened by enactment of Public Law 89–241. But as we read the legislative history of the statute to which our attention is called in plaintiff's brief this *broadening* only seems to have taken the form of increasing the scope of activities to which American made products might be subjected abroad without forfeiture of the duty exemptions accorded by the statute—activities incidental to the act of assembly such as cleaning, lubricating, and painting. However, aside from the issue of whether tuna and the sealed parts of a tin can into which it is placed constitutes assembled articles, with respect to the type of American products to which the duty exemptions under the statute apply, the language of Public Law 89–241 is more restrictive than the language it replaced.

We have considered the cases cited and the arguments advanced by the parties, and we are not persuaded of reversible error in the decisions of the Customs Court dismissing appellants' protests for untimeliness. The judgments of the court are, accordingly, affirmed.

Affirmed.